UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61506-CIV-GRAHAM/DUBÉ

DON A. PARADISO,

     Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the

Defendant (D.E. #25); and the Motion for Entry of Protective Order filed by the Defendant (D.E.

#35) pursuant to an Order of Reference entered by the Honorable Donald L. Graham, United States

District Judge. The issue before this Court is whether the record contains substantial evidence to

support the denial of benefits to the Plaintiff, Don A. Paradiso (hereinafter "Paradiso" or "Plaintiff").

## I. FACTS

Paradiso filed an application for disability insurance benefits on August 1, 2005. (R. 60-66,

81-87).[1] The application, which asserted disability as of August 1, 2005, was denied initially and on

reconsideration. (R. 40-49). Following a hearing (R. 274-291), the ALJ issued a decision denying

the request for benefits. (R. 13-24). A request for review filed with the Appeals Council was denied.

(R. 6-8).

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's
answer.

The Plaintiff, age 50 at the time of the hearing on December 11, 2007, appeared *pro se* and testified that he is 6'0" tall and weighed 425 pounds. Paradiso further testified that his medical condition has not changed in the past 1 1/2 years except for falling on August 6, 2007 and tearing his quadriceps tendon 60%, which is unrelated to his disability claim. (R. 277-278, 283). The Plaintiff stated the tearing of his quadriceps tendon require surgery, but he does not have insurance. (R. 283). The ALJ pointed out that the Plaintiff's file is missing medical records for the past 1 1/2 years, but the ALJ will request the records post-hearing and review them before issuing his decision. (R. 277-278, 291).

The Plaintiff did not object to any of the exhibits, and thus, Exhibits 1A-9F were admitted into evidence. (R. 278). Paradiso is a licensed attorney in Florida and New York; and testified he has not had any other vocational training; has never served in the military; and last worked on August 1, 2005. (R. 278-279). The record reflects that the Plaintiff collected unemployment for the first quarter of 2006 in the amount of $11, 362.00; and earnings in 2006 in the amount of $1,413.00. (R. 279-280). Paradiso has worked as a corporate lawyer for the past 15 years. (R. 280).

According to the Plaintiff, he is not able to work full-time and stated his reasons as follows:

> I can't generally stay awake or concentrate for longer than three hours at a time. I'm constantly dizzy and lightheaded from my medications. I suffer from continuing depression, which is controlled but not cured by my medication. I take five different medications a day, all of which cumulatively make me very sick but are necessary because my pressure was 258/138 when I started taking them, and that's not, not consistent with living. That's when I ended up in the hospital.

(R. 281).

The ALJ asked Paradiso if he would be able to read a book for 2 or 3 hours, take a break and them go back to it and Paradiso responded that he did not know due to constantly being dizzy and

2

lightheaded from his medication. (R. 281). The Plaintiff testified his dizziness and lightheadedness gets worse "the longer [he's] awake." (R. 281-282). Paradiso explained his depression as loss of interest, sadness, and apathy, however, no crying spells. The Plaintiff stated that he doesn't have a lot of friends, and lives with his brother and sister-in-law in a single family home and gets along well with them. (R. 282-285). Paradiso testified he does not do any housework, including cooking or washing dishes. (R. 284-285).

The Plaintiff's medications are Atenolol, Benzaepril HCTZ, Metformin, Aspirin, Wellbutrin XL and Cheratussin AC. According to the Plaintiff, he drove to the hearing and drives a couple of times per week to go to Publix and CVS. (R. 284). Paradiso described a typical day as sleeping, watching television and reading the newspaper, but he does not walk. (R. 285).

The ALJ further asked the Plaintiff what would stop him from returning to work, to which he responded that he can't stay awake, can't concentrate, and is lightheaded and/or dizzy. (R. 285). The Plaintiff stated he was sent to a psychologist, but never received a report from him. (R. 286).

In addition to the Plaintiff's testimony, Robert Bradley, a Vocational Expert, testified at the hearing. (R. 286-290). The VE classified the Plaintiff's prior work as a corporate lawyer as sedentary, skilled with an SVP of 8. The ALJ presented Bradley with a hypothetical which asked him to assume an individual that was 50 years old with the Plaintiff's education and past relevant work history; and with the ability to sit up to 8 hours per day, and stand or walk up to 3 hours per day up to 30 minutes at a time. The person would also be able to occasionally lift 10 pounds; frequently lift 5 pounds; occasionally bend, stoop, climb stairs, crouch kneel and reach above shoulder level; however, unable to crawl, work around unprotected heights or work around moving and hazardous machinery. Additionally, the person would have a moderate impairment of concentration, persistence

3

and pace. The VE responded to this hypothetical by stating that this person would not be able to perform the Plaintiff's past relevant work, but that there were other jobs within the regional/local or national economy that such a person could perform. (R. 286-287).

The VE stated other jobs that the person would be able to perform at the light level as follows: photographer finisher, DOT #976.487-010, unskilled, an SVP of 2 with 45,000 jobs in the national economy and 600 jobs in the local economy; and labeler, DOT #920.687-126, an SVP of 2 with 50,000 jobs in the national economy and 1,200 jobs in the local economy. Additionally, the VE stated that at the sedentary level the person would be able to perform work as a surveillance system monitor, DOT #379.367-010, an SVP of 2 with 55,000 jobs in the national economy and 1,200 jobs in the local economy; and assembler, DOT #713.687-018, unskilled, an SVP of 2 with 60,000 jobs in the national economy and 1,500 jobs in the local economy. (R. 287-288).

A second hypothetical posed to the VE asked him to assume that the factors for lifting identified in the first hypothetical were modified to occasionally lifting 20 pounds and frequently lifting 10 pounds; and standing or walking up to 4 hours per day up. (R. 288). The ALJ asked the VE if these modifications would expand the range of light duty jobs that would be possible. The VE responded "yes" and added the position of an office helper, DOT #239.567-010, light, unskilled, an SVP of 2, with 100,000 jobs in the national economy and 3,000 jobs in the local economy. (R. 288).

Additionally, the VE stated that the Plaintiff has transferable skills at the light and sedentary level and listed the following positions: paralegal, DOT #119.267-026, light, an SVP of 7 with 125,000 jobs in the national economy and 10,000 jobs in the local economy; and legal investigator, DOT #119.267-022, sedentary, skilled, an SVP of 7 with 125,000 jobs in the national economy and 10,000 jobs in the local economy. (R. 289).

4

Next, the Plaintiff asked the VE how many jobs would be available in Florida for a person who is unable to stay awake at his job for 3 or more hours in a row. The VE responded that if this was on a consistent basis than there would be no jobs available for said individual. Then the Plaintiff stated as follows: "I have no further questions." (R. 290).

The ALJ concluded by asking the VE if his testimony has been consistent with the Dictionary of Occupational Titles, to which Bradley responded "yes." (R. 290).

In addition to the testimony presented at the hearing, medical records and other reports were submitted to the ALJ. Records from Peter Simek, M.D. were submitted to the ALJ. (R. 149-156). The Plaintiff was seen by Dr. Simek on 4 separate occasions from March 31, 2005 through May 4, 2005. Dr. Simek's medical notes reveal that the Plaintiff suffered from obesity and hypertension. On March 31st, April 13th, and May 4, 2005, the Plaintiff weighed 400 pounds and his blood pressure was 148/100, 146/90 and 130/82. (R. 150-153).

Medical records were submitted by Serge Thys, M.D. who treated the Plaintiff from October 19, 1999 through May 10, 2005. (R. 157-171). Treatment notes from October 19, 1999 through May 30, 2000 reveal that the Plaintiff was doing well on Wellbutrin. (R. 169-171). A Psychiatric Evaluation performed by Dr. Thys on September 10, 2000, diagnosed him with major depression, among other things, and gave him a GAF of 55. (R. 167-168). Additional progress notes from Dr. Thys reveal that the Plaintiff was doing well or doing much better; was in good spirit; his hypertension was under control; he eats and sleeps well; his medical condition has stabilized well; and he feels happy. (R. 160-166).

On August 30, 2002, the Plaintiff was quoted by Dr. Thys as follows: "I am doing excellent, I am happy ... I feel good." (R. 164). On May 30, 2002, Dr. Thys' notes reveal that the Plaintiff had

5

taken several cruises and was doing well. (R. 164).

Additionally, on May 20, 2003, progress notes from Dr. Thys noted the Plaintiff "came back from a cruise and he is happy." (R. 163). On August 20, 2003, Dr. Thys noted that the Plaintiff continues to do well, is traveling, and quoted Paradiso as saying: "I am doing excellent." (R. 163). On September 22, 2004, progress notes from Dr. Thys noted the Plaintiff had been hospitalized three times in the last 7 weeks for hypertension; and he did not "feel depressed but down." (R. 161). On November 18, 2005, Paradiso told Dr. Thys that he was going on a cruise in March and was excited. (R. 160).

Records from Carlo Scalia, M.D. revealed that the Plaintiff was seen by Dr. Scalia for hypertension and obesity. (R. 172-178). According to the record, Dr. Scalia saw Paradiso for the first time on May 9, 2005, due to "slightly dizzy... when BP very high;" the Plaintiff's blood pressure was 140/90. (R. 174). The Plaintiff was seen again by Dr. Scalia on July 7, 2005, his blood pressure was "good" (130/80), but he was experiencing swelling due to side effects of the medication. The Plaintiff was diagnosed with lower extremity edema and hypertension. (R. 178). On August 4, 2005, Paradiso's swelling was noted as "much improved" and his blood pressure was 150/100. (R. 177). The Plaintiff's last visit with Dr. Scalia revealed that his blood pressure was much improved (110/70), he had no further ankle swelling and he felt well. (R. 175).

The report of a consultative evaluation by Alvan Barber, M.D. on February 22, 2006, notes that the Plaintiff's chief complaints are that his medications make him drowsy and dizzy, and that he suffers from depression. (R. 179-185). Paradiso's history was recounted as follows: he was diagnosed with hypertension at the age of 17 and is on medication; he has had an obesity problem since the age of 19 and has difficulty walking and standing for long periods of time, has right knee

6

arthritis, pain in his ankles, lower spine stenosis and shortness of breath; and he was diagnosed with depression and anxiety in 1999, is on medication, but has no suicidal ideation. (R. 179).

Physical examination by Dr. Barber revealed that the Plaintiff weighed 385 pounds; his blood pressure was 140/86; his lungs were clear; and his heart had a regular rate and rhythm. (R. 180-181). Additionally, physical examination revealed that Paradiso's upper and lower extremities muscle strength were 5/5 in right and left, however, there was decreased range of motion in the upper extremities due to pain, tight muscles, left shoulder pain and obesity. (R. 181). The evaluation further noted that the Plaintiff's mental status was alert; oriented as to time, place and person; no memory deficit; cooperative and communicated coherently; affect was normal; there was no evidence of depression or suicidal thought with no flight of ideas or hesitant thinking; and his replies were "goal directed and relevant." (R. 182). The Plaintiff was noted as having difficulty walking, unable to walk on toes or heels, and unable to squat. No assistive device was being used by the Plaintiff. (R. 182).

Dr. Barber's impression was noted as follows:

1. HTN, controlled with medications.
2. Depression, on medications.
3. Morbid obesity >380 lbs, BMI >52.3. (Obesity = BMI > 30).
4. Arthralgia, left > right shoulder, right > left knees, right and left ankles, with chronic pain.

(R. 182). It was Dr. Barber's opinion that the Plaintiff could be limited in lifting and carrying heavy objects, and in using his upper body and coordinated activities with hands due to his weight. (R. 182).

A Range of Motion Report form completed by Dr. Barber on the same date noted the Plaintiff's cervical and lumbar spines, shoulders, elbows, wrists, hands, hip, knees, and ankles were all within normal range. (R. 183-185).

7

A Physical Residual Functional Capacity Assessment dated February 28, 2006, found the Plaintiff could lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk or sit for 6 hours of an 8 hour day and had unlimited ability to push/pull. (R. 186-193). The explanation given for these findings were due to hypertension, obesity (over 380 pounds), arthralgia, ambulates slowly without an assistive device, and 80 degree flexion of the lower spine. (R. 187). The only postural limitation noted was "occasionally" climbing. (R. 188). No manipulative, visual or communicative limitations were found. (R. 189-190). All environmental limitations were marked "unlimited" with the exception of hazards (machinery, heights, etc.), which was marked "avoid concentrated exposure." (R. 190).

A psychological evaluation performed by clinical psychologist, Malcolm J. Graham, III, Ph.D. on March 8, 2006, recounted the Plaintiff's history and noted that he was diagnosed with high blood pressure at the age of 17; osteoarthritis 10 years ago; and is morbidly obese. (R. 194-196). The Plaintiff stated that his blood pressure is "now under control, but the side effects of the medication make him sleepy." (R. 195).

Dr. Graham noted the Plaintiff's mental health history as follows:

> He saw a mental health professional for the first time in 1999 for depression in West Palm Beach. Since then, he has seen three psychiatrists and one LCSW. He has never made a suicidal gesture or attempt, and has never been hospitalized for emotional or behavioral problems. He says that he "don't know" what causes his depression, but he says that he sees "no real meaning in life." He last saw a mental health professional 90 days ago in West Palm Beach.

(R. 195).

Dr. Graham's evaluation revealed no indication of depression or anxiety; his affect was appropriate with no indication of blunting, flatness or lability; and there were no behavioral indications of anxiety, depression or thought disorder. (R. 195-196). Additionally, the evaluation

revealed no problems in attention or concentration; and in recent or remote memory. According to Dr. Graham's evaluation, the Plaintiff spends most of his day watching television, reading books and reading the paper. (R. 196).

The psychological evaluation gave a prognosis of "guarded to good" and listed the diagnosis as follows:

| | |
|---|---|
| Axis I: | 300.4, Highly probable dysthymia. |
| Axis II: | V71.09, No diagnosis. |
| Axis III: | Multiple physical complaints by report. |
| Axis IV: | Vocational problems. |
| Axis V: | Current GAF: 70 - 80 |
| | Highest GAF Past Year: 70 - 80 |

(R. 196).

A Psychiatric Review Technique dated March 24, 2006, found the presence of a non-severe affective disorder (dysthymia). (R. 197, 200). No functional limitation was noted and activities of daily living was limited by the Plaintiff's physical limitations. (R. 207, 209).

A second Psychiatric Review Technique dated June 22, 2006, found the presence of a non-severe affective (depression treated) and coexisting nonmental impairment(s) that requires referral to another medical specialty. (R. 219, 222). According to this technique, the Plaintiff had mild restrictions of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence or pace. There were no episodes of decompensation. (R. 229).

A second Physical Residual Functional Capacity Assessment dated June 27, 2006, found the same exertional, postural, manipulative, visual, communicative, and environmental limitations as the previously completed assessment. (R. 211-218).

9

Medical notes from an unknown source dated April 24, 2007 through October 2, 2007, show that the Plaintiff went to this doctor because he "wants to have a doctor in case I become depressed." (R. 233). The notes from Paradiso's first doctor visit on April 24, 2007, further reveal that he had stopped the Wellbutrin 3 months prior; was happy with not being depressed, but was anxious; and weighed 400 pounds. (R. 233-234). On May 29, 2007, medical notations were "no improvement but not bad;" and anxiety was "the same." (R. 235). Paradiso's next visit on July 17, 2007, noted that he was "doing very well;" and his final visit on October 2, 2007, noted "no depression" and "anxiety - not at all." (R. 236).

Medical records from an emergency room visit at Broward General Medical Center on August 6, 2007 were also presented to the ALJ. (R. 255-273). These notes indicate the Plaintiff went to the emergency room after falling on his right knee. (R. 255). Upon arrival Paradiso's blood pressure was 143/80 and his weight was 410 pounds. (R. 256). A radiology report notes no fracture or dislocation; joint spaces were intact; bond density was within normal limits; and there was no destructive lesions identified. (R. 272). The report gave a normal impression and the Plaintiff was diagnosed with muscle strain and released on the same day. (R. 259, 272).

An MRI of the Plaintiff's right knee was taken on August 21, 2007 and noted positive findings. Specifically, a tear of the distal quadriceps at the myotendinous joint, moderate glenohumeral joint effusion, and extensive edema and inflammation noted within the soft tissues about the knee. (R. 253-254).

Clinical records from Paul I. Meli, M.D., an orthopedic surgeon, were also submitted to the ALJ. The Plaintiff was seen by Dr. Meli on September 5, 2007 and October 24, 2007. (R. 250-252). On September 5, 2007, the clinical records note that on August 6, 2007, the Plaintiff had slipped on

10

tile and landed on his right knee, but the Plaintiff reported having "minimal to no pain in the knee." Physical examination of his right knee revealed the Plaintiff was walking with a completely normal gait; extension is to 0, flexion to 60 degrees; can easily do a straight leg raise; has prepatellar swelling; has minimal tenderness on deep palpation to the musculotendinous junction of the quadriceps; and neurological examination was non-focal. (R. 252). X-ray evaluation of the right knee showed significant degenerative osteoarthritis. His psychiatric history was noted as "normal insight and judgment with appropriate responses to questions." (R. 252).

Dr. Meli's impression was that Paradiso was massively obese (410 pounds) with a tear of the musculotendinous junction of the quadriceps with very benign symptomatology with limited range of motion. Dr. Meli's treatment plan was to maintain conservative posture and place Paradiso on physical therapy. (R. 251).

The Plaintiff returned for a follow-up visit to Dr. Meli on October 24, 2007, where he stated that he had "no pain whatsoever... [and] is performing activities of daily living." (R. 250). Physical examination of the right knee revealed the Plaintiff was walking with a completely normal gait; extension to 0, flexion to 135 degrees; and no evidence of joint line tenderness either medically or laterally. Dr. Meli's impression was that Paradiso had resolution of right knee dysfunction and Dr. Meli concluded his clinical record by stating that "the most appropriate course of treating is to continue with activities of daily living." (R. 250).

On September 17, 2007, the Plaintiff began physical therapy on his right knee due to the fall he sustained. (R. 237-249). Paradiso complained about not being able to straighten his knee fully and was unable to completely bend it. The Plaintiff continued physical therapy on October 13, 20 and 25, 2007; he had an appointment for October 30, 2007, but rescheduled it. Paradiso's physical therapy

discharge summary dated February 8, 2008 noted that he "tolerated today's treatment/therapeutic activity with minimal complaints of pain and difficulty... and the patient's prognosis at time of discharge is good." (R. 237).

On June 27, 2008, the ALJ issued a decision finding that the Plaintiff's impairments of hypertension, morbid obesity and arthralgia were severe, but did not meet or equal the severity in the listing of impairments. (R. 18, 20).  The ALJ also found the Plaintiff's depression to be non-severe. (R. 19).  Additionally, the ALJ found the Plaintiff's allegations regarding his limitations were not totally credible. (R. 21).  According to the ALJ, the Plaintiff was unable to perform his past relevant work, but retained the residual functional capacity to perform a full range of light work activities. (R. 20, 22-23).  Based on this determination, the ALJ found that the Plaintiff could perform jobs which exist in significant numbers in the national economy, and thus, was not disabled. (R. 23).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th

Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Regulations promulgated by the Commissioner establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920(a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520 (c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

In the present case, the ALJ found, at step five, that the Plaintiff could not perform his past relevant work, but that he retained the residual functional capacity to perform a full range of light work activities, and thus, was not disabled. On April 14, 2009, this Court entered a Scheduling Order giving the parties until June 1, 2009 to file their motions for Summary Judgment. (D.E. #21). The Defendant filed his Motion for Summary Judgment contending that the Plaintiff had a fair hearing and that the ALJ's determination was supported by substantial evidence and should be affirmed. (D.E.

14

#25). Specifically, the Defendant argues that the ALJ properly evaluated the Plaintiff's credibility; properly assessed the Plaintiff's RFC; and properly relied on the VE to determine that the Plaintiff could perform other work.

On June 2, 2009, this Court entered an Order for Response requiring the Plaintiff to file a motion for Summary Judgment and/or a response to the Defendant's Motion for Summary Judgment. (D.E. #26). The Plaintiff has not filed a motion for Summary Judgment, but did file a Response in Opposition to Defendant's Motion for Summary Judgment, which has been reviewed and taken into consideration. (R. 28). Specifically, the Plaintiff alleges that the ALJ ignored the testimony of the Plaintiff; incorrectly posed a hypothetical question to the Vocational Expert which ignored the report of Dr. Barber; and incorrectly determined his RFC.

The Defendant filed a Reply to Plaintiff's Response in Opposition stating that the Plaintiff has failed to point to any evidence indicating that his impairments are more limited than outlined by the ALJ. (D.E. #34). The Court has independently reviewed the entire file in this case, including the evidence and testimony presented to the ALJ and agrees with the Defendant that the Plaintiff has failed to point to any evidence that would warrant a reversal of the ALJ's decision. Nevertheless, this Court will set-out the parties arguments in detail and give it's own recommendation.

In his Response, the Plaintiff's first point of contention is that the ALJ ignored the testimony of the Plaintiff.

It is well established that pain alone can be disabling. Walker v. Bowen, 826 F. 2d 996, 1003 (11th Cir. 1987). In determining whether the Plaintiff suffers from disabling pain; the following test must be satisfied:

15

> [T]o establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test
> showing: (1) evidence of an underlying medical condition; and (2)
> either (a) objective medical evidence confirming the severity of the
> alleged pain; or (b) that the severity of the alleged pain; or (b) that the
> objectively determined medical condition can reasonably be expected
> to give rise to the claimed pain.

Lamb v. Bowen, 847 F. 2d 698, 702 (11th Cir. 1988).

In the instant case, the first prong of the Lamb test was satisfied as the ALJ found the
existence of an underlying medical condition.   The ALJ found that the Plaintiff suffered from
hypertension, morbid obesity and arthralgia all severe impairments but not severe enough to meet or
medically equal, either singly or in combination to one of the listed impairments listed in Appendix
1, Subpart P, Regulation No. 4.   Additionally, the ALJ found that the Plaintiff suffered from
depression which was not severe. (R. 18).

The analysis then shifts to the second prong of the test. Disabling pain could be shown in one
of two methods. One, by objective medical evidence confirming the severity of the alleged pain or by
showing that the underlying objectively determined medical condition is of a severity which can
reasonably be expected to give rise to the alleged pain. Lamb, at 702.

Once the ALJ determined that the objective medical evidence did not confirm the severity of
the Plaintiff's alleged pain he must then look towards the Plaintiff's subjective complaints and
determine whether they can reasonable be expected to produce the alleged pain. "Whether or not the
condition could be expected to give rise to the complained of pain is a question of fact subject to the
substantial evidence standard of review." Lamb, at 702, citing to, Hand v. Heckler, 761 F. 2d 1545,
1549 (11th Cir. 1985); Boyd v. Heckler, 704 F. 2d 1207, 1209 (11th Cir. 1983).

The credibility of the Plaintiff's testimony must also be considered in determining if the

16

underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb, at 702. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F. 3d 1219, 1225 (11th Cir. 2002). Failure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that the testimony be accepted as true. Id.

While, an ALJ may not reject a plaintiff's subjective complaints of pain simply by the lack of objective evidence, the allegations of a severe impairment should be supported by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. Watson v. Heckler, 738 F. 2d 1169, 1172-1173 (11th Cir. 1984).

Further, the claimant's testimony of pain or other subjective symptoms standing alone, are not conclusive evidence of disability. See, Macia v. Bowen, 829 F. 2d 1009, 1011 (11th Cir. 1987). If an ALJ rejects a claimant's testimony on credibility grounds, the ALJ must explicitly state as much and give adequate reasons for that determination. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination must not be "a broad rejection." Dyer, 395 F.3d at 1211. Failure to set out the reasons for the discrediting of subjective pain testimony mandates, as a matter of law, that the testimony be accepted as true. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).

In the instant matter, after setting out the medical evidence in detail, the ALJ found the Plaintiff's allegations about pain not to be totally credible. Specifically, the ALJ stated as follows:

> ... the undersigned has considered the claimant's allegation that he is
> incapable of any work due to his impairments and finds it
> unpersuasive. The undersigned finds that there is evidence of a
> combination of underlying impairments that could reasonably be
> expected to cause some degree of the symptomatology alleged by the
> claimant; however, the severity of the symptoms and the degree of
> limitations alleged are simply not supported by the objective medical
> evidence of record. Moreover, the claimant's statements concerning
> his impairments and their impact on his ability to work are not entirely
> credible in light of the medical history, the reports of treating and
> examining practitioners and the degree of medical treatment required.

(R. 21).

According to the Plaintiff, he is disabled due to the side effects of his medications and depression. (R. 281). However, the limited medical records submitted by the Plaintiff and set-out above in detail reveals that his depression was non-severe and well controlled by Wellbutrin. (R. 157-171, 194-200, 219-229). Additionally, the medical evidence does not support the Plaintiff's complaint that side effects of his medications make him sleepy, drowsy, dizzy and depressed. In fact, Dr. Thys' treatment notes from October 1999 through May 2005, show that the Plaintiff was doing well, in good spirit, eating and sleeping well, medically stable, happy, and excited about going on cruises. (R. 157-171).

The ALJ clearly set out his findings applying the pain standard, specially referring to the lack of objective medical evidence, the absence of extended hospitalization, and the failure of any treating or examining doctor to opine the Plaintiff unable to work. (R. 22). The Court also notes that the ALJ set out the considerations involved in evaluating subjective complaints, and also cited to 20 CFR §404.1529, which contains the same language regarding subjective pain testimony that the Eleventh Circuit interpreted when the three-part standard was adopted. See, Wilson, 284 F.3d 1219, 1226 (11th Cir. 2002). (R. 20-21). The findings made by the ALJ suffice to constitute an adequate

18

explanation for the ALJ to reject the Plaintiff's subjective complaints and claimed restrictions. <u>See,</u> <u>Dyer.</u> Accordingly, there is no basis for error.

Next, the Plaintiff contends that the ALJ ignored the report of Dr. Barber and posed a hypothetical question which had no bearing on the physical or mental capacities of the Plaintiff and were contrary to the medical experts' opinions.

Testimony from a vocational expert is highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disability claimants. <u>Holley v. Chater</u>, 931 F. Supp. 840, 851, (S.D. Fla. 1996). Further, the ALJ has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant. <u>Foote v. Chater</u>, 67 F. 3d 1553, 1558 (11th Cir. 1995), <u>citing Allen v. Sullivan</u>, 880 F. 2d 1200, 1201 (11th Cir. 1989). However, first, the claimant bears the initial burden of proving that he is unable to perform his previous work. <u>See, Barnes v. Sullivan</u>, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work  performed, not to merely a specific prior job. <u>See, Jackson v.</u> <u>Bowen</u>, 801 F.2d 1291, 1293 (11th Cir. 1986).

As this Court has previously held, a VE's response to a hypothetical question may be relied upon, provided the question "takes into account the claimant's precise condition and limitations." <u>Holley v. Chater</u>, 931 F. Supp. 840, 851 (S.D. Fla. 1996). Further, an ALJ is not required to include limitations in the hypothetical question which "were properly rejected as unsupported." <u>Allen v.</u> <u>Barnhart</u>, 174 Fed. Appx. 497, 499 (11th Cir. 2006).

This Court notes that the ALJ stated Dr. Barber's findings in detail and concluded as follows:

> Dr. Barber reported that the claimant walked with difficulty, with a
> slow, guarded gait, he was unable to walk on his toes or heels and
> unable to squat. Dr. Barber diagnosed the claimant with hypertension,

19

> controlled with medications; depression on medications; morbid
> obesity and arthralgia (Exhibit 4F).

(R. 21).

Additionally, although the Plaintiff did not specify which "medical experts' opinions" were contrary to the ALJ's hypothetical questions posed, the Court has set out the medical record in detail and fails to see a discrepancy. In fact, a review of the ALJ's opinion demonstrates the contrary to the Plaintiff's contention. As noted previously in detail, the ALJ posed two hypothetical questions to the VE which included the Plaintiff's limitations found by the medical record. (R. 286-290). Any additional limitation recorded in the medical notes were recorded as "the Plaintiff's complaints" and not as limitations found by the examining physician, in particular Dr. Barber. (R. 179).

The ALJ concluded that, considering the Plaintiff's impairments, he could perform other work in the national economy and was therefore, not "disabled" within the meaning of the regulations is supported by substantial evidence and it is the recommendation of this Court that the decision of the ALJ be affirmed as is consistent with this Report and Recommendation.

The Plaintiff's final point of contention is that the ALJ incorrectly determined his RFC. Specifically, the Plaintiff contends that the ALJ's determination that he "can stand or walk up to four hours a day, for up to 30 minutes at a time, and... can stoop, kneel, and bend" is not supported by the medical record. (D.E. #28, para. 4).

The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess... her work-related abilities on

20

a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of

work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhart, 220 Fed. Appx. 957,

960 (11th Cir. 2007).

> The RFC assessment must first identify the individual's functional
> limitations or restrictions and assess his or her work-related abilities
> on a function-by-function basis, including the functions in paragraphs
> (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may
> RFC be expressed in terms of the exertional levels of work, sedentary,
> light, medium, heavy, and very heavy.

SSR 96-8p (4).

In the instant case, the ALJ went through all the evidence of record prior to making his final

RFC determination and in fact pointed out that the "medical evidence of record is extremely limited."

(R. 21). He properly determined the Plaintiff's subjective complaints, reviewed the treating and non-

treating physicians' opinions and records, and properly determined the Plaintiff's RFC. Specifically,

the ALJ stated as follows:

> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to sit up to 8
> hours per day, stand or walk up to 4 hours per day, up to 30 minutes
> at a time and lift up to 20 pounds occasionally and 10 pounds
> frequently. The claimant can occasionally bend, stoop, climb stairs,
> crouch, kneel and reach above shoulder level. He can perform no
> crawling or work around unprotected heights or moving or hazardous
> machinery. The claimant has a moderate impairment in his ability to
> maintain concentration, persistence or pact. Thus, the claimant retains
> the residual functional capacity to perform a range of light work as
> defined in 20 CFR 404.1567(b).

(R. 20).

The ALJ further stated as follows:

> Moreover, a review of the claimant's testimony, as well as
> examination notes from the claimant's health care providers, clearly

do not support his asserted inability to work; but rather, presents a picture indicating that the claimant is not motived to work. There is no evidence that the claimant's impairments have required any extended hospitalizations. No treating or examining physician has ever opined that the claimant cannot work; nor have they given any restrictions more limiting that the residual functional capacity set forth above.

(R. 22).

After said evaluation, the ALJ determined that the Plaintiff was unable to perform any past relevant work and asked the VE whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. (R. 22-23). The VE testified that the individual would be able to perform occupations such as officer helper, photograph finisher, labeler, surveillance systems monitor, assembler, paralegal, or legal investigator. (R. 23-24). As the ALJ based this decision on all the evidence of the record, it is this Court's opinion that the ALJ's decision is supported by the substantial evidence in the record.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be affirmed. Accordingly, the Motion for Summary Judgment filed by the Defendant (D.E. #25) should be **GRANTED**. Additionally, the Motion for Entry of Protective Order filed by the Defendant (D.E. #35) should be **GRANTED** based upon this Court's Order issued on June 24, 2009. (D.E. #36).

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Donald L. Graham, United States District Judge. Failure to file objections timely shall bar

the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847

F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996

F.2d 1144, 1149 (11th Cir. 1993).

     **DONE AND ORDERED** this _____ day of July, 2009.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

23